GNAU v. FITZPATRICK.

DEEDS—BUILDING RESTRICTIONS—INJUNCTION—EQUITY.

Where lots were sold with the restriction of a single dwelling with the necessary outbuildings on each lot, and as originally platted the lots were 60 feet wide, and plaintiff purchased one lot and 20 feet adjoining of another lot, and defendants purchased 50 feet each of the remaining 100 feet, of three lots, upon which they were proposing to build two houses, the plaintiff having already built one house upon his 80 feet, the effect being that there would be but three houses upon the three lots, there was no such violation of said restriction as would appeal to a court of equity, in injunction proceedings to restrain defendants from proceeding to build. BIRD, BROOKE, and KUHN, JJ., dissenting.

Appeal from Wayne; Codd, J. Submitted June 14, 1918. (Docket No. 97.) Decided September 27, 1918.

Bill by George J. Gnau and others against Patrick Fitzpatrick and another to enjoin the violation of certain building restrictions. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Monaghan, Monaghan, O'Brien & Crowley (Hinton E. Spalding, of counsel), for plaintiffs.*

*McNamara & Scallen, for defendants.*

MOORE, J. The trial judge stated the questions involved in this litigation as follows:

"George J. Gnau and others, plaintiffs, all of whom are residents on Boston boulevard, east, filed their bill to enjoin defendants from proceeding with the construction of two private dwellings on property situated on the southeast corner of Boston boulevard east and Brush streets, alleging that the erection of said homes were to be in violation of building restrictions imposed upon defendants' property. This property is

See note in 45 L. R. A. (N. S.) 726.

platted as part of McLaughlin and Owen subdivision, one-quarter section 37, 10,000-acre tract, Detroit.

"The subdivision was platted in 1893, and in 1898 the Park Hill Land Company, Ltd., a Michigan partnership association, became possessed of the property. Thereafter the lots were sold by said Park Hill Land Company and in each instance restrictions were incorporated, excepting that lot 11, which was conveyed by the Park Hill Land Company on January 6, 1899, did not contain the restrictions. Subsequently, however, on March 25, 1905, when this lot was again conveyed, the restriction was included. Consequently, although there is not a general restriction in its entirety, there is, at the present time, a restriction on each lot, not due to a general restriction against the entire street, but imposed at different times by different grantors. The terms of said restriction are fully set forth in plaintiffs' bill.

"Defendants Patrick Fitzpatrick and William J. Ross acquired their property on the 19th day of July, 1917, from a common grantor, Earl I. Heenan, defendant Ross receiving a deed to the easterly 50 feet of lot 50 and defendant Fitzpatrick receiving a deed to the westerly 10 feet of lot 50 and the easterly 40 feet of lot 51. The remaining 20 feet of lot 51 or the westerly 20 feet of said lot is owned by plaintiff Gnau, together with lot 52 which joins lot 51 on the west.

"The plaintiffs claim that by reason of the fact that defendants each own 50 feet of ground instead of an entire lot as originally subdivided, the erection of their homes is in violation to the spirit and letter of the restrictions.

"The existence of the restriction and its terms is not disputed.

"Plaintiffs contend that the words of the restriction: 'There shall be nothing but a single private dwelling with the necessary outbuildings erected on each lot,' are to be construed to mean that an entire lot as originally subdivided comprises one building site only. It is my opinion that the above wording of restriction is merely to limit the number of structures that may be placed on a single lot, to distort the language of the restriction to conform with plaintiffs' contention, it would be necessary to state it thus:

'Nothing but a single lot shall be used for the erection of a private dwelling,' etc. It is very apparent that this is an entirely different proposition.

"Plaintiffs further contend that plaintiff Gnau, by the purchase of 20 feet of lot 51, became the dominant owner, so to speak, of the entire lot, and that in order for any one to deal in any way with the remainder of the lot, the consent of plaintiff Gnau must be secured. This court does not recognize any such doctrine and will not lend its aid in enforcing it. From the very nature of the restriction, in its unmistakable wording, it would be impossible for this theory to prevail, for in this case it would be possible for plaintiff Gnau by the purchasing of a minor portion of this valuable lot, to arbitrarily enjoin defendant Fitzpatrick owning the entire balance of said lot from the free use of its possession. This theory is not only unjustified in law, but contrary to public policy, as it would permit persons to dictate to the owner of large tracts of land by the purchase of a few feet or even less.

"It does not appear to me that there is any question as to the intent of the parties as to the meaning of the restrictive covenant. It was, as has been before stated, to limit the number of structures that an owner may place upon one lot. The clear and unmistakable language of the restriction controverts the possibility of any other intent. There are no limitations in the restriction as to the number of feet necessary to build a residence on, nor does it say, as plaintiffs contend, that a full lot must be owned in its original state as subdivided by any one contemplating building. The language seems to me explicit and nothing can be written into a restriction or implied from the fact that plaintiff Gnau claims to have created one building site by procuring an additional 20 feet of lot 51 to add to his holdings. The testimony does not show that defendants' plans will violate any of the restrictions in this property. * * *

"There will be, after the defendants complete their private homes, but one single private dwelling on lot 51, and there will be but a single private dwelling on lot 50, which is strictly in accord with the terms and provisions of the restrictions. * * *

"A decree may be entered dismissing the bill of complaint for the foregoing reasons, with costs to be taxed."

A decree was entered in accordance with the opinion. The case is brought here by appeal.

The restrictions applicable to the lots in the instant case read:

"In the block between John R and Brush streets, the building line shall be 45 feet back from the front lot line and no dwelling shall be nearer the front lot line than these limitations prescribe, and no dwelling or other structure shall be set nearer than 10 feet to the west lot line of any lot. * * *

"There shall be nothing but a single private dwelling with the necessary outbuildings erected upon each lot. * * * No residences less than two stories in height are permitted. The cost of residences to be erected on said lots shall be as follows: * * * for those between John R and Brush street, $6,500 or more * * * *Provided*, that more than one lot is purchased for a single homestead, the purchaser will not be required to erect more than one residence on said lots."

We quote from the brief of the appellants:

"The plaintiffs contend that the defendants are violating both the letter and spirit of the restrictions imposed upon their land. They are attempting to create two 50-foot lots. The plaintiffs urge that the defendants have attempted by this to create a subdivision of the original plat so far as it concerns their property, and thus create two building sites from what had originally been one building site and a fraction of another. If they are permitted to continue with their present plans, an effectual subversion of the original plan of improvement on the streets will necessarily result. * * *

"It is apparent from the building restrictions imposed upon this subdivision that the original owners of it planned to create a high-class residential district. They imposed the same restriction upon every lot on the street. We are stating an obvious fact when we say that uniformity is the first essential in creating

a district of this type. The covenant contained in the various deeds requires uniformity in the front building line, prescribes in a uniform way the nearest distance that the buildings can be placed from the west lot lines on the various lots and prescribes uniformity in the general quality and minimum cost of the residences to be erected. The entire purpose of the restriction is obvious from a mere reading of it.

"The meaning of the restriction is likewise free from doubt or ambiguity. The restriction provides that nothing but a single private dwelling with the necessary outbuildings can be erected upon each lot. The exact language of that part of the restriction to which we refer is as follows:

" 'There shall be nothing but a single private dwelling with the necessary outbuildings erected upon each lot.'

"This can have but one meaning, namely, that an entire lot as shown upon the plat comprises one building site. A fraction of a lot of itself, therefore, would not constitute a building site. It is necessary therefore for a person who desires to possess a building site to acquire and own one full lot at least."

In his oral argument it was the claim of counsel for the plaintiff that if the owner of the middle lot of three lots acquired a small strip from the lots on each side of him that the owners of the remaining portions of those two lots could not build on their lots without his consent, thus resulting in but one residence on three lots. If an observance of the spirit of the restrictions would bring out such a result we think it would prevent the owner of a residence from buying a fractional part of a lot and that if he wanted more than one lot he should buy, not a fraction of a lot but a full lot. When defendants have done what they propose to do there will be but one residence on lot 50 and but one on lot 51. Neither residence will be within ten feet of the west line of the lot and will comply with the other restrictions.

The plaintiffs are in a court of equity. It does not

appeal to our sense of the province of that court to give them the relief they ask.

The decree of the lower court is affirmed, with costs.

OSTRANDER, C. J., and STEERE, FELLOWS, and STONE, JJ., concurred with MOORE, J.

BROOKE, J. (*dissenting*). I am unable to agree with the conclusions reached by my Brother MOORE in this case. The essential provisions of the restrictions are that:

"No dwelling or other structure shall be set nearer than ten feet to the west lot line of any lot,"

and that:

"There shall be nothing but a single private dwelling, with the necessary outbuildings, erected upon each lot."

The defendant Fitzpatrick proposes to erect a dwelling house on a piece of ground made up of the easterly 40 feet of lot 51 and the westerly 10 feet of lot 50. Lots 50 and 51 are each platted 60 feet in width. There can be no doubt that it was the intention of those who created the restrictive covenant to provide that not less than 60 feet should be occupied for each dwelling and its appurtenant structures. The fallacy of my Brother's argument is apparent if we assume that Mr. Fitzpatrick had purchased none of lot 50 and only the easterly 30 feet of lot 51 and had attempted to erect upon that 30 feet his residence. In such case, as now, he would have satisfied the exact language of the restriction, according to the reasoning of my Brother, because his residence would be the only residence on lot 51 and would be more than 10 feet east of the westerly line of lot 51. It seems to me quite apparent that in such a case any court clothed with equitable jurisdiction would enjoin the defendant Fitzpatrick from proceeding. What he proposes to do

now is, in principle, exactly what he would propose to do in the case supposed. He now proposes to use 50 feet for his residence instead of 30 feet in the supposed case, while the platted lot is 60 feet wide. The paramount rule for the construction of restrictive covenants is that effect shall be given to the actual intent of the parties, if that be possible, without doing violence to the language used. A restrictive covenant which recites that:

"There shall be nothing but a single private dwelling, with the necessary outbuildings, erected upon each lot,"

certainly cannot mean that a single private dwelling can be erected upon a strip of ground less than a lot as platted. The record contains abundant testimony to the effect that wide lots, affording opportunity for proper landscaping about residences, tend to increase the value of residential property, and that narrow lots, where the houses are built close together, tend to reduce such value. It is defendant Fitzpatrick's intention to erect a structure within five feet of his westerly lot line, whereas the restrictive covenant is that:

"No dwelling or other structure shall be set nearer than ten feet to the west lot line of any lot."

According to the reasoning of my Brother MOORE, Mr. Fitzpatrick satisfied this restriction, by asserting that the westerly 20 feet of lot 50, which he does not own, but which is owned by the complainant Gnau, may be used by him in the computation. This, it seems to me, is manifestly inequitable.

Again, suppose that Mr. Fitzpatrick was the owner of the westerly 30 feet of lot 50 and the easterly 30 feet of lot 51 and desired to erect a building thereon. Construing the restrictive covenant that:

"No dwelling or other structure shall be set nearer than ten feet to the west lot line of any lot,"

as my Brother does, Mr. Fitzpatrick would be obliged to erect his dwelling ten feet east of the center line of the plot owned by him upon the easterly twenty feet of the lot, leaving 40 feet to the west unoccupied. The word "lot" in the restrictive covenant quoted should be held to mean the building site or premises about to be improved. Given this construction in the case at bar Mr. Fitzpatrick would be obliged to erect his house ten feet from the westerly line of the property owned by him. This he cannot do because his structure as at present planned reaches to the very easterly limit of the lot he owns.

The construction placed upon the restrictions by the other owners upon this street, none of whom have attempted to replat the lots and place residences on less than a single lot, has been uniform. While this construction may not be absolutely controlling, it should receive great weight in determining the true meaning of the covenant in question.

I am of the opinion that the injunction should issue as prayed.

BIRD and KUHN, JJ., concurred with BROOKE, J.